PAGES 1 through 10

COUNTY OF LORAIN ) 
                            ) SS:
STATE OF OHIO       )                                          AFFIDAVIT

The undersigned, a representative of Lorain County Children Services, being first duly sworn, deposes and states the following:

1-F.S., born 06/27/00, 2-A.S., born 08/01/02, 3-T.W., born 04/29/04, 4-E.W, born 04/16/05, 5-N.W., born 08/19/06, 6-R.P., born 07/13/07, 7-A.J, born 02/23/2010, and 8-D.P, born 03/11/2011, are the minor children of Mother, Erica Perez.

Henry Maldonado is the Father of Fernando. Paternity is established. Mr. Maldonado is currently incarcerated for Aggravated Murder, Tampering with Evidence, and Abuse of a Corpse. He will be incarcerated until at least December 2023.

Rayshaun Powell is the father of 2-A.S and the alleged Father of 6-R.P. and 8-D.P. Paternity is established for 2-A.S. Mr. Powell is currently in jail on a charge of Rape. That charge is pending in the Lorain County Court of Common Pleas. See Case No. 10CR081774.

Travis Wyatt is the Father of 5-N.W, and the alleged Father 3-T.W. and 4-E.W. Paternity is established for 5-N.W. Mr. Wyatt has not indicated a desired to care for his children.

Al Johnson is the Father of 7-A.J. Paternity is established. It was reported that Mr. Johnson suffers from schizophrenia. Mr. Johnson has indicated that he is unable to provide care for his child.

(A) Lorain County Children Services (hereafter "LCCS") has a history of involvement with Mother regarding her inability to properly provide for the safety and well-being of the children. On November 5, 2007, LCCS received a report that Mother was asked to leave a shelter and was residing in a van with the children. Reportedly, the children were filthy. LCCS learned that in October 2007, Mother took 1-F.S. and 2-A.S. to Maternal Grandmother, Jeanette Sierra's residence. LCCS learned that prior to November 5, 2007, Mother left 3-T.W, 4-E.W, and 5-N.W. with their alleged Paternal Grandmother, Esther Wyatt. It was reported to LCCS that Mother failed to provide any items for the children. LCCS assisted family members in obtaining clothing, diapers, and supplies for the children. In addition, LCCS attempted to locate Mother and 6-R.P. On November 8, 2007, Paternal Grandmother took 3-T.W, 4-E.W, and 5-N.W to Maternal Grandmother's residence due to her inability to continue care for the children.

(B) Mother resided at the Haven Center with 3-T.W, 4-E.W, and 5-N.W, and 6-R.P. 1-F.S. and 2-A.S. resided with Maternal Grandmother. LCCS had great concern regarding Mother's inability to care and/or provide for the children. Historically Mother relied on family members to assist her, both financially and in caring for the children. Mother was unemployed and lacked income. In addition, LCCS was aware of past domestic violence issues between Mother and Mr. Powell.

(C) Mother was in contact with LCCS, yet was hesitant to participate in services. Reportedly, Mother blamed family members for LCCS' involvement.

(D) On January 17, 2008, 1-F.S., 2-A.S., 3-T.W, 4-E.W, and 5-N.W, and 6-R.P. were adjudicated Neglected and Dependent and LCCS was granted Protective Supervision. On or

about April 18, 2008, Protective Supervision was terminated as Mother was able to secure stable housing and meet the children's basic needs.

(E) Since that time, LCCS received a referral on January 30, 2012 regarding alleged sexual activity exhibited by 1-F.S with 4-E.W. and 5-N.W. At that time, Mother agreed to allow 1-F.S. to stay with relatives and 4.E.W. and 5-N.W. to stay with their paternal grandmother. LCCS began working with Mother on an in home.

(F) LCCS has concern regarding Mother's ability to provide for the children's basic needs. Mother's home has little furniture and the children sleep on mattresses on the floor because they have no beds. On more than one occasion, Mother has had minimal food in the home. Mother is not employed. LCCS has learned that 5-N.W. has gone to school with feces on her clothes and has worn clothes that were not weather appropriate. LCCS has also learned that 5-N.W. and 4-E.W. have gone to school with urine soaked clothes. On April 3, 2012, LCCS went into home and it was filthy. There was very little food in the home. 1-F.S. and 2-A.S. were home even though their suspension ended on March 30, 2012. Mother stated she was unaware that the suspension had ended. 1-F.S. and 2-A.S. were suspended due to chronic absenteeism and fighting. On that same day, LCCS saw 4-E.W. and 5-N.W. were wearing filthy clothes and smelled of urine.

(G) LCCS has concern about the children's educational needs 1-F.S. 2-A.S. 3-T.W. 4-E.W., and 5-N.W, are school aged. 1-F.S. and 2-A.S. have missed at least 26 days of school this school year. 1-F.S. and 2-A.S are currently working with a truancy officer and have chronic truancy cases in the Lorain County Court of Common Pleas Juvenile Division. See case nos. 12JD35901, 05. 4-E.W. and 5-N.W. are consistently late to school. Mother indicates that she cannot get the children to school because her car is not working and cannot walk them to school. 1-F.S. has an individualized educational plan (hereafter "IEP"). 2-A.S. needs to be assessed for an IEP but has been unable to because of her absences. 3-T.W. has behavioral issues such as ADHD, and anger outbursts. 3-T.W. attends a special school that helps to address those issues.

(H) LCCS has concern about Mother's mental health. LCCS requested that Mother complete a mental health assessment. Mother went to the Nord Center and she was recommended to complete a drug and alcohol assessment.

(I) LCCS has concern about Mother's supervision of the children. On February 2, 2012, LCCS learned that Mother had left all of the children home alone with no adult supervision with a lit candle. Additionally, on April 3, 2012, LCCS saw 4-E.W. had a wound across her nose and face from a pizza box being thrown at her face by 3-T.W.

Therefore, LCCS is requesting a disposition of protective supervision of the minor children to Lorain County Children Services.

REASONABLE EFFORTS:
1. LCCS provided case management/case counseling.
2. LCCS conducted home visits.
3. LCCS provided information and referral.
4. LCCS made a referral for Berea Children's Home.

2

Travis Wyatt is the Father of 5-N.W, and the alleged Father 3-T.W. and 4-E.W. Paternity is established for 5-N.W. Mr. Wyatt has not indicated a desired to care for his children.

Al Johnson is the Father of 7-A.J. Paternity is established. It was reported that Mr. Johnson suffers from schizophrenia. Mr. Johnson has indicated that he is unable to provide care for his child.

Lorain County Children Services (hereafter "LCCS") has a history of involvement with Mother regarding her inability to properly provide for the safety and well-being of the children. On November 5, 2007, LCCS received a report that Mother was asked to leave a shelter and was residing in a van with the children. Reportedly, the children were filthy. LCCS learned that in October 2007, Mother took 1-F.S. and 2-A.S. to Maternal Grandmother, Jeanette Sierra's residence. LCCS learned that prior to November 5, 2007, Mother left 3-T.W, 4-E.W, and 5-N.W. with their alleged Paternal Grandmother, Esther Wyatt. It was reported to LCCS that Mother failed to provide any items for the children. LCCS assisted family members in obtaining clothing, diapers, and supplies for the children. In addition, LCCS attempted to locate Mother and 6-R.P. On November 8, 2007, Paternal Grandmother took 3-T.W, 4-E.W, and 5-N.W to Maternal Grandmother's residence due to her inability to continue care for the children.

Mother resided at the Haven Center with 3-T.W, 4-E.W, and 5-N.W, and 6-R.P. 1-F.S. and 2-A.S. resided with Maternal Grandmother. LCCS had great concern regarding Mother's inability to care and/or provide for the children. Historically Mother relied on family members to assist her, both financially and in caring for the children. Mother was unemployed and lacked income. In addition, LCCS was aware of past domestic violence issues between Mother and Mr. Powell.

Mother was in contact with LCCS, yet was hesitant to participate in services. Reportedly, Mother blamed family members for LCCS' involvement.

On January 17, 2008, 1-F.S., 2-A.S., 3-T.W, 4-E.W, and 5-N.W, and 6-R.P. were adjudicated Neglected and Dependent and LCCS was granted Protective Supervision. On or about April 18, 2008, Protective Supervision was terminated as Mother was able to secure stable housing and meet the children's basic needs.

Since that time, LCCS received a referral on January 30, 2012 regarding alleged sexual activity exhibited by 1-F.S with 4-E.W. and 5-N.W. At that time, Mother agreed to allow 1-F.S. to stay with relatives and 4.E.W. and 5-N.W. to stay with their paternal grandmother. LCCS began working with Mother on an in home.

LCCS has concern regarding Mother's ability to provide for the children's basic needs. Mother's home has little furniture and the children sleep on mattresses on the floor because they have no beds. On more than one occasion, Mother has had minimal food in the home. Mother is not employed. LCCS has learned that 5-N.W. has gone to school with feces on her clothes and has worn clothes that were not weather appropriate. LCCS has also learned that 5-N.W. and 4-E.W. have gone to school with urine soaked clothes. On April 3, 2012, LCCS went into home and it was filthy. There was very little food in the home. 1-F.S. and 2-A.S. were home even though their suspension ended on March 30, 2012. Mother stated she was unaware that the suspension had ended. 1-F.S. and 2-A.S. were suspended due to chronic absenteeism and fighting. On that same day, LCCS saw 4-E.W. and 5-N.W. were wearing filthy clothes and smelled of urine.

LCCS has concern about the children's educational needs 1-F.S. 2-A.S. 3-T.W. 4-E.W., and 5-N.W, are school aged. 1-F.S. and 2-A.S. have missed at least 26 days of school this school year. 1-F.S. and 2-A.S are currently working with a truancy officer and have chronic truancy

cases in the Lorain County Court of Common Pleas Juvenile Division. See case nos. 12JD35901, 05. 4-E.W. and 5-N.W. are consistently late to school. Mother indicates that she cannot get the children to school because her car is not working and cannot walk them to school. 1-F.S. has an individualized educational plan (hereafter "IEP"). 2-A.S. needs to be assessed for an IEP but has been unable to because of her absences. 3-T.W. has behavioral issues such as ADHD, and anger outbursts. 3-T.W. attends a special school that helps to address those issues.

(M) LCCS has concern about Mother's mental health. LCCS requested that Mother complete a mental health assessment. Mother went to the Nord Center and she was recommended to complete a drug and alcohol assessment.

(N) LCCS has concern about Mother's supervision of the children. On February 2, 2012, LCCS learned that Mother had left all of the children home alone with no adult supervision with a lit candle. Additionally, on April 3, 2012, LCCS saw 4-E.W. had a wound across her nose and face from a pizza box being thrown at her face by 3-T.W.

Therefore, LCCS is requesting a disposition of protective supervision of the minor children to Lorain County Children Services.

REASONABLE EFFORTS:
1. LCCS provided case management/case counseling.
2. LCCS conducted home visits.
3. LCCS provided information and referral.
4. LCCS made a referral for Berea Children's Home.
5. LCCS made a referral for parent mentoring.
6. LCCS made contact with schools.

_Nancy Griffiths_
Nancy Grifffiths, Complainant
Lorain County Children Services
226 Middle Avenue
Elyria, Ohio 44035

Sworn to and subscribed before me on May 9, 2012

_Michelle B. Kundtz_
Notary Public

Caseworker: Steve Silva

Michelle R. Kundtz
Notary Public State of Ohio
My Comm Expires April 25 2015

Previous Lorain County Juvenile Court filings:
| Case No. | Date | Judge |
| --- | --- | --- |
| 07JC20810, 11, 12, 13, 14, 15 | 12/18/2007 | DLB |

WHEREFORE Complainant therefore prays that this Court inquire into alleged Neglect and Dependency of said child and grant a disposition of Protective Supervision to Lorain County Children Services.

4

Lorain County Children Services reserves the right to seek any of the following alternative dispositional orders at the time of the hearing hereon, as authorized by Ohio Revised Code Section 2151.353 or as the Court may deem appropriate, to wit: Protective Supervision or Temporary Custody to Lorain County Children Services or, alternatively, grant a disposition of Temporary or Legal Custody to a Relative or Interested Third Party, and make such other order as the Court deems necessary as provided by law.

The Lorain City School District should bear the costs of public education in Ohio.

*Amy L. Price*
Amy L. Price, #0082261
Assistant Prosecuting Attorney
Attorney for Lorain County Children Services
225 Court Street
Elyria, Ohio 44035
(440) 329-5396

5

# HOT RODS
## NHRA qualifying opens
**SPORTS, D1**

# THE CHRONICLE TELEGRAM

**SATURDAY, July 7, 2012**

www.chroniclet.com

# A THANKS
## Union honors Rep.
**LOCAL & STATE,**



# Children found in squalor

## Lorain mother charged, kids are taken from her

**Chelsea Miller**
The Chronicle-Telegram

LORAIN — Police said seven young children were found dirty and neglected in a Long Avenue home on Thursday and their mother, who officers said was four months pregnant and intoxicated, was arrested and charged with seven counts of child endangering.

Police were dispatched to the 1700 block of Long Avenue for a report of a woman with several children who was standing in front of a home screaming at its residents.

The woman, Erica Perez, 28, said someone had stolen her phone, and she wanted it back.

*Perez*

The residents of the home told police that no one had stolen Perez's phone and that the woman had been drinking all day and is "always drunk." Residents said Perez sits on her porch all day and has numerous visitors who drink with her.

Police continued their investigation at Perez's Long Avenue home to find seven children, ages 1 to 9, covered in filth and visibly neglected, a police report said.

According to the report, officers were told the 1-year-old had a seizure earlier that day, but Perez said the child often suffers from seizures and he was OK and did not need an ambulance. The other children in the home said the boy often has seizures, and Perez only calls the ambulance once a week. They said the boy would stop breathing and turn blue each time he has a seizure.

According to the report, Perez's home "smelled of urine and garbage" and "there were numerous flies flying all over the room." Police also found an empty liquor bottle in the kitchen, along with a few beers.

Officer A.J. Mathewson wrote in a police report, "in my almost 13 years as a police officer, I have never observed such a filthy, disgusting, unsafe, unhealthy environment where children were being housed. The condition of the residence and children was disturbing."

Police said a single mattress was found upstairs, about the size of a small crib mattress. One of the children told police that three or four children slept on the mattress.

See **FOUND**, A2



Seven children were removed Thursday by police; children services workers from this house at 171

STEVE MANHEIM /

## FOUND
From A1

LifeCare was called to check on the children. One of the medics told police she had contacted Lorain County Children Services about the residence before.

When police attempted to arrest Perez, she allegedly tried to pull away from officers. According to the report, she then urinated on herself before she was placed in the police cruiser.

The youngest child was transferred to Mercy Regional Medical Center because of his seizure. Emergency room staff said he was covered in feces, peanut butter and dirt. The boy was cared for and discharged from the hospital.

Perez's sisters temporarily took the children while Children Services investigated the matter, Perez's sister, Monica, said Children Services had already become involved and said she thought custody was granted to her mother who lives in Florida.

According to Patti-Jo Burnett, spokeswoman for Lorain County Children Services, the agency has been involved with Perez since January, Burnett said Children Services last visited Perez's home June 20, but she would not discuss the circumstances regarding the initial investigation.

"We had been working with the mother, and it did not appear to deteriorate to that level as when the police visited," she said.

Burnett said Children Services usually does not take custody of children until after trying to work with the parent or guardian, but these decisions are made on a "case-by-case" basis. She said Children Services has not yet made permanent arrangements for Perez's children yet.

"The children are currently with relatives.. We're still investigating and cooperating fully with law enforcement," she said.

Perez was transferred to Lorain County Jail and charged with seven counts of child endangering, one count each of disorderly conduct persisting, disorderly conduct by intoxication, obstructing official business and resisting arrest. She has former convictions for obstructing official business, resisting arrest and disorderly conduct persisting.

She was arraigned Friday in Lorain Municipal Court, where she entered a plea of not guilty. Her pretrial is scheduled for 1 p.m. July 25.

Contact Chelsea Miller at 329-7123 or cmiller@chroniclet.com.

## ELECTION 2012
## Tepid jobs report sets stag for feisty summer campai

Ben Feller
The Associated Press

PITTSBURGH — Disappointing job growth jolted the presidential campaign four months before Election Day, and the candidates quickly put their vastly different views on display, underscoring the economy as the central issue between President Barack Obama and Republican rival Mitt Romney.

Obama sought consolation from hiring figures that showed at least some job growth still under way, calling them a "step in the right direction" and pleading with voters to stick with him. Romney spoke of misery across the nation, warned Obama would do nothing but deepen it and addressed a disgruntled middle class by saying "This kick in the gut has got to end."

Overall, the stand-pat nature of the new data was not a game-changer in the close presidential contest — one in which the president's approval ratings hover around or slightly below 50 percent and he retains a slight lead, if any, over Romney.

And while no president since the Great Depression has sought re-election with unemployment as high as it is now, Obama has proven to be a resilient campaigner while Romney has come under conservative criticism, accused of playing it too safe and muddling his message.

The lackluster jobs report showed a net of only 80,000 jobs created in June and an unemployment rate unchanged at 8.2 percent.

Republican presidential candidate Mitt Romney speaks about jo Friday at Bradley's Hardware in Wolfeboro, N.H.

The president accused Romney of caving in to the pressure of conservatives in his party on the question of whether the health insurance requirement carries a "penalty" or a "tax." The former governor of Massachusetts had little to say when pressed about that, turning all attention back to job creation and Obama's record, the areas where he wants to compete and win.

**Restaurant own after presidenti**
AKRON — A restaura who hosted President B Obama for breakfast on became ill and died ho Josephine "Ann" Harr ley Township died of na

EXHIBIT B

# HOUSE
From A1

## FROM PAGE ONE



CHRONICLE FILE
Children were removed from this Long Avenue home in Lorain on Thursday.

two men had taken several DVDs.

According to Lorain County Children Services spokeswoman Patti to Burnett, Perez's children are currently in the care of relatives. She said Children Services is exploring permanently housing the children with relatives, but she would not comment on whether any relatives expressed interest in taking them in permanently.

Burnett said if family members are unwilling or unsuitable to care for the children, the agency will ask the court for custody of the children and house them with a foster family.

According to Burnett, Thursday's encounter with tained empty liquor bottles, Perez was not the first for and beer cans and "smelled Children Services. On June 20, a caseworker of urine and garbage." visited the home, but the Burnett said Children children remained in the Services is reviewing the management of the case, but she would not name the caseworker who visited Perez's home nor release Children Services' report of the initial visit to Perez's home.

Burnett said it was reported that the condition did not appear to deteriorate to that level as when the police visited."

According to a police report, Perez's home contained

Contact Chelsea Miller at 329-7123 or cmiller@chroniclet.com.

8

# Stonewalling

EXHIBIT

### Children Services seemingly doesn't care about Perez children or informing the public

*"Doing the right things right, the first time, on time, every time, one child at a time."*

— Lorain County Children Services' slogan

Lorain County Children Services did wrong by Erica Perez's family, at least seven children at a time.

Perez, 28, is the pregnant mother who was charged July 5 with seven counts of child endangering after police reported discovering her drunk and her children living in appalling conditions in the 1700 block of Long Avenue in Lorain. An officer with 13 years of experience on the force said he'd never before seen "such a filthy, disgusting, unsafe, unhealthy environment" for children.

When we reported the arrest, Children Services acknowledged that it had been involved with the family since January but denied that conditions in the house during a caseworker's last visit had deteriorated to the level that police discovered: stench, filth, insects everywhere. The agency's assessment was at least puzzling, given that the caseworker had been there just 15 days earlier.

We also wondered why the agency had not removed the children from the home.

So we kept asking questions, not just of agency officials, who provided few satisfactory answers, but of others as well. We checked records, too. What we learned only added to our doubts about the agency's sense of urgency.

We found that:

- The agency has been dealing with the family at least since 2001, when one of Perez's sisters complained to Lorain police that Perez had abandoned a 1-year-old with family members. He is now 12 and the subject of a truancy complaint that he missed 24 days of school last year. He was not with his siblings, ages 1 to 9, when police arrested Perez.
- Six Children Services employees have worked with the family, which the agency said is "not abnormal." It wouldn't explain their roles.
- Two sisters, with whom police left the children after arresting Perez, have criminal records. One of them, Monica Perez, was convicted of assault in 2007 and domestic violence in 2000. The other, Jessica Lopez, with whom the 12-year-old had been living, was convicted of disorderly conduct persisting in 2001.

What we don't know includes:

- Whether the agency is trying to place the children with their grandmother in Florida, something Monica Perez told police she thought was already in process.
- Whether the agency has considered placing the children with a foster family in the meantime.
- How many calls have been placed to the agency regarding Perez. The agency refused to disclose the number, much less their nature.
- Whether Gary Crow, director of the agency, is satisfied with its performance in this case and, if not, what he is going to do about it. The agency refused to schedule a sit-down interview with him.

Stonewalling is the wrong thing. The right thing is to give the community answers.

9

## PRIOR CASES

This is not the first time Children Services, under Executive Director Gary Crow's leadership, has come under fire for the agency's handling of a case.

① ■ In 1999, a settlement was reached in a wrongful death lawsuit filed by the parents of Ryan Scott against Children Services and Ryan's foster parents, Frank and Vickie Lowery.

Ryan, 2, was taken from his parents and placed in the custody of Children Services in January 1998 after Lorain police found the family living in squalor.

The toddler died March 27, 1998, at Rainbow Babies & Children's Hospital in Cleveland, where he was taken after Frank Lowery called 911 because Ryan had stopped breathing. Ryan's death was ruled a homicide after an autopsy revealed he had suffered two blows to the head and had 39 other bruises and contusions on his body.

Afterward, it was learned that Children Services had been working with Ryan's parents, Brett Scott and Sherri Yost, but did not remove Ryan and his siblings from the family's home until police intervened.

It was reported that both Frank and Vickie Lowery had misdemeanor convictions that Children Services had learned about when they applied to become parents.

② ■ In April 2009, Tammie and Wilbur Kerns were charged with two counts of misdemeanor child endangering after Lorain police found animal feces on the floor of their home and dirty dishes throughout the home.

The couple's then-8-year-old son and 10-year-old daughter were found wearing dirty clothes.

Police said a caseworker at Children Services had been to the home in March where she found similar conditions with more than 10 dogs, cats and birds living in the house and animal waste throughout.

Crow declined to comment on the specifics of the case, but told The Chronicle-Telegram then that he was concerned enough to look into the case, adding that children are removed from a home when "the conditions are jeopardizing to the health and well-being of the child."

"Generally, we would try to help the family get it cleaned up, unless it was totally beyond redemption," he added.

③ ■ In 2008, Elyria police found four children, ages 7 months to 7 years, alone in a White Court apartment.

Police said the apartment was bug-infested and garbage-filled with several large kitchen knives on the table.

Children Services caseworkers had visited the apartment a week before police charged with woman, Melody Reed, with child endangering.

Crow said that caseworkers believed the environment was "typical of folks living in that situation."

"The conditions the police described didn't exist when (the caseworker) was there. If you leave children unsupervised for an amount of time, conditions can deteriorate rapidly," he said.

Children Services had reportedly worked with Reed in June 2007 until February 2008, but the children were not removed from the apartment. The agency again became involved with Reed in May 2008.

④ Children Services also had problems prior to Crow's hiring in 1994. His predecessor, Tom Porter, also had to deal with questions about the agency's effectiveness.

⑤ ■ In June 1990, Kristen Lamarr died in Cleveland MetroHealth Medical Center after sustaining injuries at a foster parent's home.

Lorain County Children Services had placed Lamarr in the care of Richard and Susan Schultz. The two testified that Kristen had fallen down stairs in a walker, but experts said the girl's injuries suggested she had been beaten, shaken and abused prior to her death.

Richard Schultz was charged with involuntary manslaughter and child endangering and acquitted of the

GARY CROW'S HISTORY