## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **Rayshaun Powell,** | ) | **CASE NO. 1:12 CV 1965** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **v.** | ) | |
| | ) | **Memorandum of Opinion and Order** |
| **Stephen Silva,** *et al.***,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### INTRODUCTION

*Pro se* Plaintiff Rayshaun Powell filed this action under 42 U.S.C. § 1983 against Lorain County Children Services ("LCCS") Social Worker Stephen Silva, LCCS Supervisor Nancy Griffiths, LCCS Administrator Gary Crow, and the City of Elyria, Ohio.  In the Complaint, Plaintiff claims Defendants have not taken adequate steps to remove his biological children from their mother's home.  He seeks monetary damages.

### BACKGROUND

Erica Perez is the mother of eight minor children.  Plaintiff has established paternity of one of the children (A.S.) and is the alleged father of two other children (R.P. and D.P.).[1]  (Doc.

---

[1]    Plaintiff's mother filed an Affidavit indicating Perez adopted J.F., but LCCS does not mention this child in any records concerning the family.

1-1 at 1).  He is currently incarcerated in the Madison Correctional Institution serving an eight-year sentence for rape.  Henry Maldonado is the father of F.S., and is currently incarcerated in the Marion Correctional Institution serving a 20-year to life sentence for aggravated murder, tampering with evidence and abuse of a corpse.  (Doc. 1-1 at 1).  Travis Wyatt has established paternity of N.P., and is alleged to be the father of T.W., and E.W.  (Doc. 1-1 at 1).  LCCS notes Wyatt does not want custody of his children.  Al Johnson is the father of A.J. but suffers from schizophrenia and is unable to care for his child.

Plaintiff alleges LCCS has been involved with Perez since 2007 due to her inability to provide a safe environment for her and her children.  In October 2007, Perez left F.S. and A.S., ages 7 and 5, in the care of their maternal grandmother.  She left T.W., E.W., and N.P., ages 3, 2, and 11 months, at the home of their paternal grandmother.  None of the children were sent with diapers, clothing, or supplies.  The paternal grandmother of T.W., E.W. and N.P. took the children to the home of their maternal grandmother in November 2007 saying she could not take care of the children.  LCCS became involved and assisted the grandmother with the purchase of diapers, clothing and food.  The agency attempted to locate Perez and R.P. who was only four months old.  The Complaint does not indicate when Perez was located or when the children were returned to her care.

Eventually, T.W., E.W., N.W., and R.P returned to live with their mother in a shelter.  F.S. and A.S. continued to reside with their maternal grandmother.  LCCS noted domestic violence by Plaintiff toward  Perez.  They also noted  Perez was reluctant to participate in services offered by LCCS blaming family members for her problems.  LCCS reported  Perez was unemployed with no source of income and completely reliant on family members for

financial assistance and child care. All six of her children[2] were removed from her care and placed in protective supervision in January 2008. They were returned to Perez's custody in April 2008 upon a finding that she was able to secure stable housing and meet the needs of her children.

LCCS received a referral on January 30, 2012 which concerned alleged sexual activity by F.S., age 12, with E.W. and N.P., ages 8 and 7. Plaintiff agreed to allow F.S. to stay with relatives while E.W. and N.P. stayed with their paternal grandmother. LCCS also noted concerns for the health and safety of the children remaining in the home. LCCS noted Perez's home had little furniture. The children slept on mattresses on the floor because they had no beds. There was minimal food in the house and Perez was again unemployed. The school-aged children went to school infrequently and when they did go to school, they arrived in clothing soaked with feces and urine. The case worker noted the children were not always dressed appropriately for the weather.

Even under these conditions, LCCS did not take the children out of the Perez home, and listed the primary goal of intervention as preventing the children from being removed from their mother's care. Stephen Silva was the caseworker assigned to the case. Goals listed in the case plan include helping Perez obtain a GED, and find child care. A mental health evaluation was recommended, as well as working with a parent mentor or family counselor to provide basic care for the children.

LCCS conducted a home visit again in April 2012. The social worker found that the home was filthy and had very little food. A.S. and F.S. had been suspended from school for

---

[2] A.J. and D.P. were born in February 2010 and March 2011, respectively.

chronic absenteeism and fighting.  The suspension had ended but they had not returned to school.  F.S. and A.S had missed 26 days of school in the 2011-2012 school year and a truancy officer was working with the family.  E.W. and N.P. are consistently late for school.   Perez indicated her car was not working and she could not walk them to school.  Based on these observations,  Griffiths completed an Affidavit which indicated LCCS would be requesting protective supervision for the minor children.  It does not appear that this request was processed as the children remained in the home with  Perez.

In July 2012, Lorain police officers were called by neighbors to the Perez house.  When the officers arrived they found  Perez, four months pregnant and drunk in the street, accusing her neighbors of stealing her cell phone.  (Doc. 1-1 at 6).  Police found seven of her eight children, ranging in age from one to nine years old, living in deplorable conditions.  One child was wearing a diaper soaked in feces while the others were dirty and smelling of urine.  Police were informed that the youngest child suffers from seizures which frequently cause him to stop breathing.  He had apparently suffered a seizure earlier in the day but Perez had not sought medical treatment for him.  He was taken to a nearby hospital, treated, and released to  Perez's sister.  (Doc. 1-1 at 7)  Police arrested  Perez and charged her with seven counts of child endangerment.  That action is still pending in the Lorain Municipal Court.  In the wake of negative publicity generated by LCCS's handling of the case, LCCS case worker Stephen Silva resigned and LCCS supervisor Nancy Griffiths was suspended.

Plaintiff does not clarify his role in raising his biological children or their siblings.  He refers to  Perez's children by other men as his "children...by wedlock," suggesting he is or was married to  Perez.  (Doc. 1 at 7).  While he references  Perez's movement with the children to

-4-

shelters and the homes of relatives, he does not indicate his involvement with the family.  LCCS does not mention in any of its documents that Plaintiff was residing in the home or providing care for the children.  Lorain County Court of Common Pleas dockets indicate Plaintiff began serving his eight year sentence for rape in August 2012, one month after the children were finally removed from the home in July 2012.[3]

Plaintiff asserts four claims for relief.  First, he claims the Defendants denied his children and the half-siblings of his children "their rights of health and welfare in a safe environment" and "refus[ed] or neglect[ed] to prevent a criminal act."  (Doc. 1 at 7.)  He further asserts that the Defendants conspired "to violate the rights, privileges, and immunities guaranteed the children by the constitution... ."  (Doc. 1 at 7.)  He asserts Gary Crow and the City of Elyria knew or should have known of the situation and failed to take steps to prevent injury to the children.  In his second claim, Plaintiff asserts Defendants violated Ohio Revised Code § 2151.421 by failing to report neglect or dependence.  In his third claim, Plaintiff contends Silva, Griffiths and Crow had a duty to the children to protect them and breached that

---

[3]        Lorain County Court of Common Pleas dockets reflect Plaintiff has been incarcerated several times between 2004 and the present date.  He pled guilty to charges of domestic violence on December 6, 2004 and was sentenced on December 8, 2004 to two years in prison.  See *Ohio v. Powell*, No. 04CR065894 (Lorain Cty Ct. Com. Pl. indict. filed  Sept. 16, 2004).  He pled guilty to charges of one count of possession of drugs, one count of driving under suspension, and one count of drug paraphernalia offenses on August 30, 2007 and was sentenced to thirty days in jail on November 9, 2007.  *See Ohio v. Powell*, No. 07CR073359 (Lorain Cty Ct. Com. Pl. indict. filed May 24, 2007).  Plaintiff entered a plea of guilty to domestic violence on August 29, 2008 and was sentenced that same day to two years incarceration.  *See Ohio v. Powell*, No. 08CR076221 (Lorain Cty Ct. Com. Pl. indict. filed July 16, 2008).  Finally, two years later, Plaintiff was indicted on November 24, 2010 on one count of rape.  He was convicted on May 29, 2012 and sentenced on August 24, 2012 to eight years incarceration.  *See Ohio v. Powell*, No. 10CR081774 (Lorain Ct. Com. Pl. indict. filed November 24, 2010.  Lorain County Court of C o m m o n   P l e a s   d o c k e t s   c a n   b e   v i e w e d   a t : http://cp.onlinedockets.com/lorainc p/case_dockets/search.aspx.

duty by leaving them in the custody of their mother.  He claims the Defendants violated state

law which he claims entitles him to damages under 42 U.S.C. § 1983.  He mentions due process

and equal protection but does not explain the basis for these claims.  Finally, in his fourth claim,

Plaintiff asserts a cause of action against the Defendants for intentional infliction of emotional

distress.  He claims the Defendants' failure to protect his children caused him to experience

emotional distress.  He claims the City of Elyria is liable under the doctrine of *respondeat*

*superior*.

## STANDARD OF REVIEW

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364,

365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is

required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a

claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[4]  *Neitzke v.*

*Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v.*

*City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or

fact when it is premised on an indisputably meritless legal theory or when the factual

contentions are clearly baseless.  *Neitzke*, 490 U.S. at 327.  A cause of action fails to state a

claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A pleading must contain a "short and plain

---

[4]      An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the
plaintiff and without service of process on the defendant, if the court explicitly states that it is
invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the
reasons set forth in the statute.  *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997);
*Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris
v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir.
1985).

statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009).  The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555.  The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard.  *Id.*  In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

### **DISCUSSION**

As an initial matter, Plaintiff lacks standing to assert claims which are based on a violation of the rights of his children or his children's half-siblings.  The only federal claims here are asserted under 42 U.S.C. § 1983.  To establish a prima facie case under 42 U.S.C. §1983, Plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).  Claims asserted in a § 1983 action are personal to the injured party and, therefore, can only be brought by the person whose rights were violated.  *Shepard v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2003).

In this case, the children are the injured parties.  Plaintiff asserts the Defendants violated the children's "rights of health and welfare in a safe environment."  (Doc. 1 at 7.)  He further asserts that the Defendants conspired "to violate the rights, privileges, and immunities guaranteed the children by the constitution... ."  (Doc. 1 at 7.)  He contends the Defendants

violated state law, and denied the children due process and equal protection.  Because the claims under 42 U.S.C. § 1983 all rely on violation of the children's rights, Plaintiff lacks standing to assert them.

Likewise, Plaintiff cannot assert claims under Ohio Revised Code § 2151.421.  This statute mandates that individuals engaged in certain professions report suspected child abuse or neglect.  The statute goes on to provide that "whoever violates division (A) of this section [requiring reporting of child abuse or neglect] is liable for compensatory and exemplary damages to the child who would have been the subject of the report that was not made."  OHIO REV. CODE § 2151.421(M).  Again, Plaintiff's children and their siblings may file an action for damages under this statute; however, Plaintiff cannot pursue an action based on the violation of their rights.

Moreover, Plaintiff cannot bring these claims on behalf of his children or his children's siblings.  In general, a party may plead and conduct his or her case in person or through a licensed attorney.  *See* 28 U.S.C. § 1654; *Eagle Associates v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991).[5]  An adult litigant who wishes to proceed *pro se* must personally sign the Complaint to invoke this Court's jurisdiction.  *See* 28 U.S.C. § 1654; *Steelman v. Thomas*, No. 87-6260, 1988 WL 54071 (6th Cir. May 26, 1988).  A minor child must appear through counsel and cannot be represented by a non-attorney, even if the non-attorney is the child's parent.

---

[5]    28 U.S.C. § 1654 provides:

> In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as by the rules of such courts, respectively, are permitted to manage and conduct cases therein.

-8-

*Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986); *Lawson v. Edwardsburg Public School*, 751 F.Supp. 1257 (W.D. Mich. 1990).  Plaintiff is not a licensed attorney and therefore is not authorized to represent any of the children in court.

Consequently, the claims asserted under 42 U.S.C. § 1983 in the first and third counts of the Complaint are dismissed, as well as the claim asserted in the second count for violation of the Ohio Revised Code.

The only cause of action asserted in this Complaint which is based on an injury suffered personally by Plaintiff is his state law claim for intentional infliction of emotional distress. Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966).  The Court, however, may exercise discretion in hearing state law matters. *Id.* at 726.  In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed. *Id.* Having dismissed Plaintiff's federal law claims, this Court declines jurisdiction to hear his state law claim asserted in the fourth count.

**CONCLUSION**

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan                                    
PATRICIA A. GAUGHAN
Dated: 11/26/12                                    United States District Judge